UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS PETER WICKER,

        Petitioner,

v.                                  CASE NO. 14-12370
                                  HONORABLE JOHN CORBETT O'MEARA

DAVID BERGH,

        Respondent.

_____/

**OPINION AND ORDER
DISMISSING THE HABEAS CORPUS PETITION,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter has come before the Court on petitioner Thomas Peter Wicker's *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for assault with intent to do great bodily harm less than murder, *see* Mich. Comp. Laws § 750.84, and possession of a firearm during the commission of a felony (felony firearm), *see* Mich. Comp. Laws § 750.227b. Petitioner alleges as grounds for relief that (1) the State withheld favorable evidence from him and (2) the prosecutor used false testimony to obtain Petitioner's convictions and also suppressed newly discovered exculpatory evidence from the defense. Respondent David Bergh urges the Court to dismiss the petition on grounds that Petitioner failed to comply with the statute of limitations and that the state courts' adjudication of Petitioner's claims was objectively reasonable. The Court agrees that the habeas petition is untimely. Accordingly, the Court will dismiss the petition on that basis. A procedural history and analysis follow.

## I. Background

### A. The Charges, Trial, and Direct Appeal

In 1998, Petitioner was charged in Saginaw County, Michigan with assault with intent to commit murder, felony firearm, felon in possession of a firearm, and first-degree home invasion. He was tried before a jury in Saginaw County Circuit Court where

> the alleged victims, Robert Mason and Anthony Thomas, testified that as they arrived and were preparing to enter the Mason residence at 3250 Bundy in the City of Saginaw the defendant and other unknown persons ambushed them with a flurry of gun fire. Numerous shots were fired at Thomas and his vehicle but he was able to flee uninjured. The testimony indicated that Mason was not a target of the attack and that he was able to avoid injury by hiding beneath his vehicle. Both Mason and Thomas identified defendant as one of the shooters. Defendant presented an alibi defense which the jury did not accept.

*People v. Wicker*, No. 98-015657 FC 4, page 3, Op. and Order of the Court (Saginaw Cty. Cir. Ct. Nov. 22, 2011).

The parties agreed not to present the felon-in-possession count to the jury, and on November 19, 1998, the jury acquitted Petitioner of the home-invasion count. The jury nevertheless found Petitioner guilty of felony firearm and assault with intent to do great bodily harm less than murder as a lesser-included offense of assault with intent to commit murder. On December 23, 1998, the trial court sentenced Petitioner as a fourth habitual offender to two years in prison for the felony-firearm conviction and to life imprisonment with the possibility of parole for the assault conviction.

Petitioner appealed his convictions and also moved to remand his case to the trial court for an evidentiary hearing. He claimed that: (1) the trial court failed to

2

properly instruct the jury on the name of the complainant and the date of the offense; and (2) trial counsel deprived him of effective assistance by failing to (a) present the testimony of two witnesses and (b) request a jury instruction on the use of "prior bad act" evidence.  The Michigan Court of Appeals remanded Petitioner's case to the trial court so that Petitioner could move for a new trial on the ground that his trial attorney was ineffective.  On remand, the trial court held an evidentiary hearing and denied Petitioner's motion for new trial after concluding that trial counsel was not ineffective. *See People v. Wicker*, No. 98-015657 FC 4, Op. and Order (Saginaw Cty. Cir. Ct. Feb. 1, 2000).  The Michigan Court of Appeals subsequently affirmed Petitioner's convictions in an unpublished opinion.  *See People v. Wicker*, No. 216969 (Mich. Ct. App., 2001 WL 669334 (Mich. Ct. App. May 15, 2001).  On November 30, 2001, the Michigan Supreme Court denied leave to appeal.  *See People v. Wicker*, 465 Mich. 918; 636 N.W.2d 529 (2001) (table).

### B.  The First Motion for Relief from Judgment and Subsequent Appeal

On November 6, 2002, Petitioner filed a motion for relief from judgment in which he alleged that:   (1) his convictions should be reversed because the prosecutor engaged in misconduct and defense counsel failed to object to the misconduct; (2) the trial court abused its discretion by admitting evidence of little or no probative value; (3) the cumulative effect of trial counsel's errors entitled him to a reversal of his convictions and a new trial; and (4) appellate counsel was ineffective for failing to raise these issues in the appeal of right.  The trial court denied Petitioner's motion after determining that Petitioner's first and fourth claims lacked merit and that his second and third claims

3

were addressed at trial or in the court's opinion denying a new trial. *See People v. Wicker*, No. 98-015657 FC 4, Order Denying Post-Appellate Relief (Saginaw Cty. Cir. Ct. Feb. 5, 2003). The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal the trial court's decision for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Wicker,* No. 253368 (Mich. Ct. App. Aug. 20, 2004); *People v. Wicker*, 472 Mich. 913; 697 N.W.2d 154 (2005) (table).

### C. The First Habeas Corpus Petition

On June 10, 2005, Petitioner filed a federal habeas corpus petition in the Western District of Michigan. He claimed that: (1) the trial court failed to properly instruct the jury on the name of the complainant and the date of the offense; (2) he was denied his right to present a defense and his right to effective assistance of counsel by his attorney's failure to present the testimony of two witnesses; (3) the cumulative effect of trial counsel's errors deprived him of his Sixth Amendment right to effective assistance of counsel; (4) the trial court denied him a fair trial by admitting evidence of other bad acts, which had little or no probative value; (5) the trial court abused its discretion by denying Petitioner's motion for relief from judgment; and (6) appellate counsel deprived him of effective assistance by failing to file a supplemental brief after the remand to the trial court.

The assigned magistrate judge recommended that the petition be denied, and on September 26, 2008, the district judge adopted the magistrate judge's report and recommendation and denied the petition. *See Wicker v. Palmer*, No. 1:05-cv-402, 2008

4

WL 4425604 (W.D. Mich. Sept. 26, 2008).  Petitioner appealed the denial of his habeas petition, but the United States Court of Appeals for the Sixth Circuit denied Petitioner's application for a certificate of appealability.  *See Wicker v. Palmer*, No. 08-2422 (6th Cir. Apr. 15, 2009).

### D.  The Second Motion for Relief from Judgment and Subsequent Appeal

On February 25, 2011, Petitioner filed a second motion for relief from judgment in which he raised his current habeas claims.  He asserted that the prosecutor (1) withheld evidence critical to his defense, (2) knowingly used false and perjured testimony to obtain his conviction, and (3) suppressed exculpatory evidence.  After Petitioner supplemented his motion with an affidavit from his attorney, the trial court denied the motion for relief from judgment, stating:

> Defendant's attempt to characterize himself as the victim of an elaborate conspiracy to frame him is without merit and the court finds no sound basis to conclude that the failure to provide counsel with this so-called exculpatory evidence made any difference in this case, undermined the confidence in the verdict, or rendered the entire trial fundamentally unfair.

*People v. Wicker*, No. 98-015657 FC 4, page 5, Op. and Order of the Court (Saginaw Cty. Cir. Ct. Nov. 22, 2011).  The Michigan Court of Appeals denied leave to appeal the trial court's decision, *see People v. Wicker*, No. 309191 (Mich. Ct. App. Sept. 18, 2012), and on April 29, 2013, the Michigan Supreme Court likewise denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *People v. Wicker*, 493 Mich. 967; 829 N.W.2d 234 (2013) (table).

**E.  The Application for Permission to File a Second or Successive Habeas Petition and the Current Petition**

On June 20, 2013, Petitioner applied to the United States Court of Appeals for the Sixth Circuit for permission to file a second or successive application for the writ of habeas corpus.  He sought permission to raise the same claims that he presented to the state trial court in his second motion for relief from judgment.  Specifically, he alleged that, in response to a Freedom of Information Act request in 2007, he obtained new evidence establishing that the prosecutor failed to disclose favorable evidence and also suborned perjury.  On May 12, 2014, the Sixth Circuit denied Petitioner's motion as unnecessary because Petitioner had not exhausted state remedies for his claims when he filed his first habeas petition and, therefore, he could not have raised his claims in that petition.  *See In re Thomas P. Wicker*, No. 13-1837 (6th Cir. May 12, 2014) (unpublished).

Finally, on June 10, 2014, Petitioner signed his current habeas corpus petition, and on June 17, 2014, the Clerk of the Court filed the petition.  Petitioner maintains that the State withheld favorable evidence from him and that the prosecutor used false testimony from the complaining witnesses to obtain his convictions.  As noted above, Respondent argues, among other things, that the habeas petition was filed after the expiration of the statute of limitations.

## II.  Analysis

### A.  The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year period of limitations for state prisoners to file their federal habeas corpus

6

petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1));

*Holbrook v. Curtin*, __ F.3d __, __, No. 14-1247, 2016 WL 4271875, at *2 (6th Cir. Aug.

15, 2016) (citing § 2244(d)(1)).  The limitations period runs from the latest of following

four dates:

> **(A)** the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review;

> **(B)** the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from filing by such State
> action;

> **(C)** the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or

> **(D)** the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  "AEDPA also contains a tolling provision, which

specifies that 'the time during which a properly filed application for State post-conviction

or other collateral review with respect to the pertinent judgment or claim is pending shall

not be counted toward any period of limitation under this subsection.' " *Holbrook*, 2016

WL 4271875, at *2 (quoting 28 U.S.C. § 2244(d)(2)).

Petitioner's convictions became final under § 2244(d)(1)(A) in early 2002 when

the availability of direct review to the state courts and to the United States Supreme

Court was exhausted.  *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).  Petitioner

nevertheless argues in favor of a delayed start to the limitations period under U.S.C. §§

2244(d)(1)(B) and 2244(d)(1)(D).  *See* Pet. for Writ of Habeas Corpus, page 19, and Traverse to Respondent's Answer, page 1.

### B.  Delayed Starts

Under 28 U.S.C. § 2244(d)(1)(B), the limitations period can begin to run on the date when a state-created impediment is removed if the petitioner was prevented from filing by unlawful state action.  And under 28 U.S.C. § 2244(d)(1)(D), the limitations period can begin to run on the date when the factual predicate for the petitioner's claims "could have been discovered through the exercise of due diligence."

Petitioner claims to have newly-discovered evidence, which he acquired in 2007 while his first habeas corpus petition was pending in the United States District Court for the Western District of Michigan.  Although the limitations period ordinarily is not tolled while a federal habeas corpus petition is pending, *Griffin v. Rogers*, 308 F.3d 647, 651 (6th Cir. 2002) (citing *Duncan v. Walker*, 533 U.S. 167 (2001)), the Court will assume for purposes of this case that the limitations period was tolled while Petitioner's first habeas corpus petition was under consideration in federal court.  Review of that petition concluded on April 15, 2009, when the Sixth Circuit Court of Appeals denied Petitioner's application for a certificate of appealability.

The statute of limitations began to run on the following day, and it ran uninterrupted for a year and ten months, that is, until February 25, 2011, when Petitioner filed his second motion for relief from judgment.  The filing of the motion did not revive the limitations period or restart the clock at zero.  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.

8

N.Y. 1998)).  Consequently, the current habeas petition, filed in 2014, is untimely even under a delayed start to the limitations period pursuant to § 2244(d)(1)(B) and § 2244(d)(1)(D).[1]

### C. Equitable Tolling

The habeas statute of limitations is subject to equitable tolling, but the Supreme Court has "made clear that a [habeas] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (adopting *Holland's* two-factor test for determining whether a habeas petitioner is entitled to equitable tolling).

Petitioner has not shown that some extraordinary circumstance stood in the way of filing his second motion for relief from judgment in 2007 after he acquired the newly-discovered evidence on which he relies.  He demonstrated his ability to raise the issue when he filed a post-judgment motion to expand the record in his first habeas corpus case.  *See Wicker v. Palmer*, No. 1:05-cv-402, ECF Nos. 52-53 (W.D. Mich. Oct. 27, 2008).  He nevertheless waited until 2011, a year and ten months after the Sixth Circuit denied a certificate of appealability in the first habeas case, to file his second motion for

---

[1]  Although the Sixth Circuit granted Petitioner permission to file his habeas petition, the Sixth Circuit does not consider compliance with the statute of limitations when determining whether a habeas petition is "second or successive."  *In re Jones*, 652 F.3d 603, 606 (6th Cir. 2010); *In re McDonald*, 514 F.3d 539, 543-44 (6th Cir. 2008). Therefore, this Court is not barred from considering whether Petitioner's habeas petition is time-barred.

relief from judgment.  By then, the limitations period had expired, and Petitioner has not offered any explanation for not diligently pursuing his rights.  The Court therefore declines to equitably toll the limitations period.

### D.  Actual Innocence

Petitioner has asked the Court to excuse his untimely filing on the basis that he is innocent of the crimes for which he is incarcerated.  The Supreme Court has held that actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is the expiration of the statute of limitations. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).   The Supreme Court "caution[ed], however, that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"   *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

### 1.  The FBI Interview with Rudy Liddell

To support his claim of innocence, Petitioner relies on an FBI agent's report summarizing the agent's interview with Rudy Liddell (Liddell).  According to the report, which is dated August 15, 2000, Liddell stated during the interview that, on the night of the shooting, he heard gunshots and saw a number of unknown people exiting his residence on Bundy Street.  Liddell initially stated in the interview that he called Rob Mason (Mason) to tell him that his house was being shot up.  Liddell then said that he was mistaken and that Mason was actually with him at another location at the time and

10

that he drove Mason to the Bundy Street address where he noticed the home invasion. He saw one group of people in the backyard and another group of people on the side of the house.  Liddell stated that he could not identify anyone and could not recall whether "Chan," that is, Anthony Thomas (Thomas), was there.  Liddell also stated during the interview that he left Mason at the residence, but later that day or the following day, Mason told Liddell that (1) he (Mason) thought Wicker perpetrated the assault against him, and (2) the FBI and city police wanted Wicker off the streets and told Mason to say it was Wicker.  Liddell goes on to say that Wicker had terrorized the whole city and that Liddell kept guns in his house to protect himself from Wicker.  *See* Pet. for Writ of Habeas Corpus, Ex. A.

Petitioner points out that Liddell said he brought Mason with him to the scene of the shooting.  Additionally, Petitioner interprets Liddell's statement to mean that Thomas was not present during the shooting.  Because Mason and Thomas testified as eyewitnesses to the shooting, Petitioner contends that Liddell's statement to the FBI proves that Mason and Thomas perjured themselves at trial.

Liddell, however, merely stated in his interview with the FBI agent that he could not recall whether Thomas was present at the shooting, and he contradicted himself when he mentioned Mason.  Initially, he stated that he called Mason during the shooting; he then changed his statement and said that Mason was with him at another location and that the two of them drove to the Bundy Street house where they came upon the home invasion.

11

Liddell's corrected statement about what occurred not only contradicted the trial testimony of Thomas, Mason, and a police officer, it also contradicted Mr. Siler's testimony at the state evidentiary hearing that Mason and Thomas were with him before the shooting and that he (Siler) drove Mason and Thomas to the scene of the shooting. *See People v. Wicker*, No. 98-015657 FC 4, Op. and Order of the Court, pages 4-5 (Saginaw Cty. Cir. Ct. Nov. 22, 2011). The Court therefore concludes that Liddell's statement to the FBI agent on August 15, 2000, is not persuasive evidence of Petitioner's innocence.

### 2. Mason's Pretrial Statement to the Police and Post-Trial Conversation with the FBI Agent

As additional proof of his innocence, Petitioner relies on Mason's pretrial statement to the police that he thought the shooting "was a result of testimony [he] gave for the Feds." Pet. for Writ of Habeas Corpus, Ex. B. Petitioner also relies on Mason's conversation with an FBI agent on August 15, 2000. During that conversation, "Mason said he'd recently read a transcript about a pending drug indictment involving Derrick Peterson and the transcript implicated Mason in the drug conspiracy." *Id.*, Ex. G. Petitioner interprets Mason's statements to mean that Mason was cooperating with the authorities and that he falsely identified Petitioner at trial as the shooter in an attempt to obtain favorable treatment from the authorities in a criminal matter against Mason.

Mason's comments do not necessarily mean that Mason cooperated with the police in Petitioner's case in exchange for favorable treatment in a drug case against Mason. In fact, Mason's conversation with the FBI agent on August 14, 2000, occurred more than a year and a half after Petitioner's trial, and, during the same conversation,

12

Mason stated that his testimony at Petitioner's trial was truthful, that he testified of his own free will, and that nobody influenced his testimony. *See id.* And at trial, Mason acknowledged that he might have made the comment about the shooting being the result of some testimony he gave to the Feds, but he claimed that he did not know what the shooting was about, and he doubted that anyone had a reason to shoot him. (Trial Tr. Vol. II, at 108, Nov. 13, 1998.)

The state trial court, moreover, concluded from a review of the entire court file that there was nothing in the file or in the newly discovered reports to support the contention that any of the trial witnesses were informants. The trial court also found no evidence that the witnesses made deals with law enforcement authorities for favorable treatment in pending criminal cases in exchange for their testimony at Petitioner's trial. *See People v. Wicker*, No. 98-015657 FC 4, Op. and Order of the Court, page 4 (Saginaw Cty. Cir. Ct. Nov. 22, 2011). Petitioner attempts to discredit the trial court's findings by pointing to a record of travel arrangements that were made for Thomas prior to his testimony in Petitioner's trial. *See* Pet. for Writ of Habeas Corpus, Ex. H. But this is not new evidence.[2] Thomas admitted at trial that he received money from the police for his trial expenses, which included air transportation and a hotel. (Trial Tr. Vol. II, at 74, Nov. 13, 1998.)

Furthermore, both the FBI agent and a detective testified at the evidentiary hearing in state court that they were not aware of any drug charges against Thomas.

---

[2]  Mason's pretrial statement to the police that he thought the shooting "was a result of testimony [he] gave for the Feds" also is not new evidence. As noted above, he was questioned about that comment at Petitioner's trial. (Trial Tr. Vol. II, at 108, Nov. 13, 1998.)

Both men also denied making a deal with Thomas in exchange for his testimony at Petitioner's trial.  *See Wicker v. Palmer*, No. 08-2422, order denying a certificate of appealability (6th Cir. Apr. 15, 2009.)

### 3.  Summary

Petitioner has failed to demonstrate that, in light of his newly discovered evidence, no reasonable juror would have voted to find him guilty beyond a reasonable doubt.  At most, the evidence would have impeached the trial testimony of Mason and Thomas.  But "latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account of petitioner's actions." *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992).  The Court therefore concludes that Petitioner's "new" evidence about Thomas and Mason is not credible evidence of actual innocence. Consequently, Petitioner may not pass through the "actual innocence" gateway and have his claims heard on the merits.

## III.  Conclusion

Petitioner filed his habeas petition after the statute of limitations expired.  He is not entitled to statutory or equitable tolling of the limitations period, and he has not asserted a credible claim of actual innocence.   The Court therefore dismisses the habeas petition as untimely.

## IV.  Denying a Certificate of Appealability;
## Granting Leave to Proceed *In Forma Pauperis* on Appeal

Before a habeas petitioner may appeal a District Court's decision, a certificate of appealability must issue.   28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).   A

14

certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, a district court rejects a habeas petition on procedural grounds without reaching the merits of the petitioner's underlying claims, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate whether the Court's procedural ruling is correct or whether the petition states a valid claim of the denial of a constitutional right. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may seek a certificate of appealability from the United States Court of Appeals for the Sixth Circuit, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

Date: September 30, 2016                              s/John Corbett O'Meara
                                                     United States District Judge


I hereby certify that on September 30, 2016 a copy of this opinion and order was served upon the parties of record using the ECF system and/or by first-class U.S. mail.

                                                     s/William Barkholz
                                                     Case Manager

15